In re DUBLIN PROPERTIES, a Limited Partnership, Debtor.

FRANKFORD TRUST COMPANY, Plaintiff,

v.

DUBLIN PROPERTIES, a Limited Partnership, Defendant.

Bankruptcy No. 80–03020G.
Adv. No. 81–0026G.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 18, 1983.

Stuart F. Ebby, Toll, Ebby & Gough, Philadelphia, Pa., for plaintiff, Frankford Trust Co.

Nathan B. Feinstein, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for debtor/defendant, Dublin Properties, a Ltd. Partnership.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

■ The issue in the case *sub judice* is whether the automatic stay imposed by section 362(a) of the Bankruptcy Code ("the Code") was modified as to certain real property of the debtor by virtue of the terms of a consent judgment entered into by the debtor and the bank and subsequently approved by us. We conclude that the stay was not modified because, according to the terms of the consent judgment, any such modification was contingent upon the execution of a "surviving mortgage note" and said note was never executed.

The facts of the instant case are as follows:[1] On November 17, 1980, Dublin Properties ("the debtor") filed a petition under chapter 11 of the Code. Subsequent thereto, Frankford Trust Company ("Frankford") filed a complaint for relief from the automatic stay under section 362 of the Code in order to permit it to foreclose on the debtor's real property. On July 31, 1981, we entered a consent judgment ("the consent judgment") whereby the debtor and Frankford agreed, *inter alia*, that:[2]

> 8. The Automatic Stay under Section 362 of the Bankruptcy Code is hereby modified to permit Frankford to proceed by way of state court mortgage foreclosure proceedings (or execution on the

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Olney Federal Savings and Loan Association also signed the consent judgment. However, it is not a party to the instant controversy.

Judgment or Judgments previously entered in connection therewith) to foreclose upon the 10 parcels described above as the Frankford Lots. The Debtor shall not in any way contest or oppose such execution or foreclosure proceedings, or the Sheriff's distribution, if any, resulting therefrom.

\*    \*    \*    \*    \*    \*

11. The Debtor shall forthwith execute and deliver to Frankford its Mortgage Note in the aggregate sum of $450,-000, bearing no interest, which Mortgage Note shall provide for payment of at least $25,000 within one year after the date of the Note and an additional $25,000 (an aggregate of $50,000) within two years after the date of the Note, with any unpaid balance due and payable on April 30, 1984 ("Surviving Mortgage Note").

\*    \*    \*    \*    \*    \*

The Debtor shall execute a Mortgage to secure the Surviving Mortgage Note covering the 40 lots described herein as the Debtor's Lots.

19. Notwithstanding paragraphs 1, 8, 10, 11 and 18, or anything else herein contained, Frankford may, in lieu of foreclosure and a new mortgage, reduce its existing liens on the Debtor's Lots to $450,000, and modify the terms of payment and maturity date as provided in Paragraph 11.

23. The lifting of the stay shall in all respects survive confirmation of a Plan, an adjudication of the Debtor, a conversion of this Chapter 11 proceeding to any other Chapter of the Bankruptcy Code or a reinstitution of any proceedings under the Bankruptcy Code subsequent to the confirmation of the Debtor's Plan, *and shall in all events apply to the Surviving Mortgage Note and the mortgage securing the Surviving Mortgage Note* (emphasis added).

It is undisputed that the "Surviving Mortgage Note" specifically referred to in paragraphs eleven (11) and twenty-three (23) of the consent judgment, *supra,* was never executed (N.T. 11/30/82 at 11). Nevertheless, Frankford took the position

that the debtor was in default on the remaining mortgage debt on the forty lots and proceeded to schedule the lots in question for sheriff's sale on November 17, 1982. However, on that same day, we entered a restraining order enjoining Frankford from proceeding with said sale. Thereafter, the debtor filed an "application for issuance of [an] order to show cause and for contempt judgment" against Frankford for its actions in scheduling the sheriff's sale. Frankford then filed the instant motion for summary judgment on the debtor's application alleging that paragraph twenty-three (23) of the consent judgment "clearly and unambiguously" lifted the automatic stay imposed by Section 362(a) of the Code as to the lots in question.

■ The well-settled principles of contract interpretation require that a written document must be construed most strongly against the party who drafted it. *Galligan v. Arovitch,* 421 Pa. 301, 219 A.2d 463 (1966); *Heidt v. Aughenbaugh Coal Co.,* 406 Pa. 188, 176 A.2d 400 (1962). Consequently, the consent judgment and, in particular, paragraph twenty-three (23) of said judgment, must be strictly construed against Frankford, the author of the consent judgment (N.T. 11/17/82 at 16).

Paragraph eight (8) of the consent judgment expressly and unqualifiedly modified the automatic stay to permit Frankford to foreclose upon ten (10) of the debtor's fifty (50) lots. Frankford contends, essentially, that paragraph twenty-three (23) of the consent judgment granted Frankford similar rights as to the debtor's remaining forty (40) lots. We cannot accept such an interpretation. Paragraph twenty-three (23) is clear and unambiguous. It provides that "[t]he lifting of the stay ... shall in all events apply to the Surviving Mortgage Note and the mortgage securing the Surviving Mortgage Note." Frankford maintains that this language lifted the automatic stay as to the debtor's remaining lots notwithstanding the fact that the "Surviving Mortgage Note"—to which special reference was made in both paragraph eleven

(11) and twenty-three (23)—was never executed by the parties. Frankford interprets paragraph twenty-three (23) as lifting the automatic stay as to the forty (40) lots *regardless* of whether or not the Surviving Mortgage Note was executed. We find no basis whatsoever for such an interpretation. Rather, an objective reading of the precise and unambiguous language contained in paragraph twenty-three (23) suggests that the lifting of the stay was contingent upon the execution of the Surviving Mortgage Note. Further, the only section of the consent judgment that mentions the lifting or modification of the stay as to Frankford—other than in paragraph eight (8)—is paragraph twenty-three (23). We can find no other provision in the consent judgment that even arguably lifts or modifies the automatic stay so as to allow Frankford to foreclose on the remaining forty (40) lots. Therefore we conclude that, since the "Surviving Mortgage Note" alluded to in paragraphs eleven (11) and twenty-three (23) was never executed, paragraph twenty-three (23) of the consent judgment did not lift the automatic stay imposed by section 362(a) of the Code as to the debtor's remaining forty (40) lots and that, therefore, the automatic stay remains in full force and effect as to those forty (40) lots. This is especially true in light of the grave consequences of modifying section 362 of the Code and in light of the further fact that we must, under Pennsylvania law, construe the consent judgment most strongly against Frankford, its author. Consequently, we will deny Frankford's motion for summary judgment.